UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JOSEPH GREGORY ROSS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:19-cv-00063-SEB-DML |
| | ) |
| FRANK LOOP, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Granting Motion for Summary Judgment and Directing Entry of Final Judgment**

Plaintiff Joseph Ross brought this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his Fourteenth Amendment rights by denying his request to use the restroom when he was confined at the Floyd County Jail. Mr. Ross sues Officer Christian Bush for failing to take him to the restroom and Sheriff Frank Loop for failing to train Officer Bush. Defendants Sheriff Frank Loop and Christian Bush seek summary judgment on Mr. Ross's claims Mr. Ross has not responded to the motion.[1] For the following reasons, the defendants' motion for summary judgment is granted.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the

---

[1] The Court notes that the defendants reported that the motion for summary judgment was returned undelivered to Mr. Ross, presumably because he has been released from prison. *See* dkt. 38. But Mr. Ross was obligated to keep the Court informed of his address and follow Court deadlines.

record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

Mr. Ross failed to respond to the defendants' summary judgment motion. Accordingly, the facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules

results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Facts

A. *Mr. Ross's Requests to Use the Restroom*

On or around July 11, 2018, Bush, a Floyd County, Indiana jail officer, was stationed at the East Pod of the Floyd County Jail. Dkt. 34-2 ¶ 3. As the officer on duty in the East Pod, Bush's responsibilities included monitoring the inmates in the Jail's recreation area to ensure the inmates' safety and the security of the Jail. *Id.* While Bush was monitoring the inmates in East Pod, an inmate named Taisian Winford kicked the door to the recreation area and asked Bush to escort him and Ross to the restroom, which was in their housing area. *Id.* ¶ 4. At the time Winford asked Bush to take him and Ross to the restroom, Bush was the only officer monitoring the inmates in the Jail's recreation area. *Id.* ¶ 5. Bush could not leave his post to take Winford and Ross to the restroom because it would have left the other inmates in the recreation area unsupervised endangering the safety of the inmates in the recreation area and the security of the jail. *Id.* Since it was not possible for Bush to escort Winford and Ross back to their housing area to use the restroom, Bush responded to Winford's request by telling him he would attempt to get another officer to do so. *Id.* ¶ 6. Bush then called over the radio for any available officer to come to the recreation area to escort Winford and Ross to the restroom. *Id.*

Approximately five minutes after Bush called on the radio for another officer to escort Winford and Ross to the restroom, Winford started kicking the door and again asked for someone

to escort him and Ross to the restroom. *Id.* ¶ 7. After Winford's second request for someone to escort him and Ross to the restroom, Bush told Ross and Winford he was trying to get someone to escort them to the restroom and asked them to be patient. *Id.* ¶ 8. Bush again called out on the radio to see if there was any officer available to escort them to the restroom. *Id.* ¶ 9. Approximately five minutes after Winford's second request, Winford kicked the door again and asked for someone to escort him and Ross to the restroom. *Id.* ¶ 10. After Winford's third request, Bush again called out on the radio to see if there was any officer available to escort Ross and Winford to the restroom. *Id.* ¶ 11. After Bush called on the radio for the third time, another officer came to the recreation area to take Winford and Ross to the restroom. *Id.* ¶ 12. However, by the time the other officer arrived Ross had already defecated in his uniform. *Id.*

No more than 15-20 minutes elapsed between Winford's first request for an escort to the restroom and another officer arriving at the recreation area to escort them to the restroom. *Id.* ¶ 14. Ross never told Bush he was going to defecate and/or urinate on himself if he did not go to the restroom immediately. *Id.* ¶ 13. Bush was not aware of Ross having any sort of medical condition which would have kept him from being able to wait 15-20 minutes to use the restroom. *Id.* ¶ 16. Furthermore, Ross had the opportunity to use the restroom in his housing area before going to the recreation area. *Id.* ¶ 15. Ross was in the recreation area for less than thirty minutes before Winford requested to be escorted to the restroom. *Id.*

Loop was the elected Sheriff of Floyd County, Indiana all times relevant to this suit. Dkt. 34-3 ¶ 2. Loop did not have any personal interactions with Ross while he was in the Floyd County Jail's recreation area on or around July 11, 2018. Dkt. 34-3 ¶ 2. Ross never informed Loop he needed to use the restroom on July 11, 2018, or on any other day. Dkt. 34-3 ¶ 4. Likewise, no other

4

person informed Loop that Ross needed to use the restroom on July 11, 2018, or on any other day. *Id.*

B. *Training*

The Floyd County Sheriff's Department trains its corrections officers to allow inmates to use the restroom when the inmate indicates the need to do so. Dkt. 34-3 ¶ 5. All inmate living "pods" have restroom facilities that the inmates can access and utilize whenever they are in the "pod." *Id.* If an inmate requests to use the restroom while in a location that does not have restroom facilities readily available such as a recreation area, jail staff is instructed to escort the inmate to a restroom as quickly as possible. *Id.* However, the primary concern of all jail staff is always the safety and security of the facility, the inmates, and the staff therein. *Id.* Therefore, the policy of the Floyd County Jail is that Jail staff should never leave inmates unsupervised. *Id.* In cases where an inmate requests to use the restroom, but an officer would be forced to leave other inmates unsupervised in order to escort the inmate to the restroom, the officer is trained to request additional help from other officers so that at least one officer can supervise the remaining inmates while another officer escorts the inmate to the restroom. *Id.* During the period relevant to this suit, the Floyd County Jail never trained jail staff to ignore inmate requests to use the restroom nor did it train its officers to delay inmates' ability to use the restroom except in such instances when a delay was necessary to ensure the safety and security of the facility and the inmates and staff therein. *Id.* ¶ 6.

### III. Discussion

The defendants move for summary judgment on Mr. Ross's claims arguing that they did not violate his Fourteenth Amendment rights and that Bush was properly trained.

A. *Fourteenth Amendment*

In this case, Ross asserts that Bush violated his Fourteenth Amendment rights by not immediately escorting him to the restroom when Ross indicated he needed to go. Since Ross was a pretrial detainee at the time the incident at issue occurred, his claim is analyzed under the Fourteenth Amendment. *See Smith v. Dart,* 803 F.3d 304, 309 (7th Cir. 2015). Under the Fourteenth Amendment, a pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish,* 441 U.S. 520 (1979).

> A pretrial condition can amount to punishment in two ways: first, if it is "imposed for the purpose of punishment," or second, if the condition "is not reasonably related to a legitimate goal – it if is arbitrary or purposeless – a court permissibly may infer that the purpose of the government action is punishment."

*Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 856 (2017) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

Here, it is undisputed that Bush was the only officer monitoring the recreation area when Ross asked to use the restroom. When Ross asked to use the restroom, Bush called for another officer to escort him so that the recreation area would not be left unattended. There is no evidence that Ross was left in the recreation area as punishment. In addition, ensuring that the recreation area was not left unsupervised was reasonably related to the need to maintain the safety and security of the jail. No reasonable jury would find that Bush violated Ross's Fourteenth Amendment rights in these circumstances.

B. *Training*

Loop also seeks summary judgment on Ross's claim that he failed to properly train Bush. Supervisors may be liable under § 1983 for a failure to train in limited circumstances. The plaintiff must show that the defendant knew that his failure to train was likely to lead to constitutional violations. *Kitzman–Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000). Ultimately, a plaintiff

must show that the official knew that his training was inadequate to handle a particular situation and that a constitutional violation was likely without improvements. *Id.* Here, because Ross has failed to show that Bush violated his constitutional rights, he has failed to support a claim that Loop failed to train him. Loop is therefore entitled to summary judgment on Ross's claims.

### IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [32], is **granted**. Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: __11/2/2020__

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOSEPH GREGORY ROSS, JR.
157449
BRANCHVILLE - CF
BRANCHVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
21390 Old State Road 37
BRANCHVILLE, IN 47514

All Electronically Registered Counsel